1  SAN DIEGO IP LAW GROUP LLP
   JAMES V. FAZIO, III (CSB# 183353)
2  jamesfazio@sandiegoiplaw.com
   TREVOR Q. CODDINGTON, PH.D. (CSB# 243042)
3  trevorcoddington@sandiegoiplaw.com
   12526 High Bluff Drive, Suite 300
4  San Diego, CA  92130
   Telephone:    (858) 792-3446
5  Facsimile:    (858) 792-3501

6  Attorneys for Plaintiff
   NOVATEL WIRELESS, INC.
7

8              UNITED STATES DISTRICT COURT OF CALIFORNIA

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11 | NOVATEL WIRELESS, INC., a Delaware          CASE NO. **'16CV2545 WQHBGS**
   | corporation,
12 |                                              COMPLAINT FOR:
   |              Plaintiff,
13 |                                              1.  BREACH OF CONTRACT; AND
   |     vs.                                      2.  GOODS AND MERCHANDISE
14 |                                                  SOLD AND DELIVERED
   | RELIANCE COMMUNICATIONS, LLC, a
15 | New Jersey limited liability company,       **DEMAND FOR JURY TRIAL**

16 |              Defendant.

17

18

...

**COMPLAINT**

Plaintiff Novatel Wireless, Inc. ("Novatel") hereby complains of Defendant Reliance Communications, LLC ("Reliance") and alleges as follows:

## Introduction

1. This is an action to collect approximately $549,701.51 plus interest that Reliance owes Novatel for USB551 broadband modems that Novatel has sold, delivered, and invoiced to Reliance under a Distribution Agreement between Novatel and Reliance dated October 13, 2010 ("Agreement" attached hereto as Exhibit A), and Amendment Number 1 thereto effective April, 2012 ("Amendment" attached hereto as Exhibit B) and for which Reliance has not paid.

## The Parties

2. Plaintiff Novatel is a Delaware corporation with its principal place of business located at 9645 Scranton Road, Suite 205, San Diego, California 92121.

3. Reliance is a New Jersey limited liability company with its principal place of business located at 555 Wireless Boulevard, Hauppauge, New York 11788.

## Jurisdiction and Venue

4. The Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

5. The Court has personal jurisdiction and venue over this action because in the Agreement the Parties expressly "agree that any suit or proceeding arising out of or relating to this Agreement shall be had only in the state or federal courts sitting in the County of San Diego, California. Each Party hereby submits to the jurisdiction of such courts, waives any objection that it may have to the venue of such suit, action or proceeding in any such court or that such suit, action or proceeding in such court was brought in an inconvenient forum and agrees not to plead or claim the same." Ex. A, section 21.

## General Allegations

6. On October 13, 2010, Novatel and Reliance entered into a Distribution Agreement also referred to as a Master Purchase Agreement ("Agreement") under which (among other things) Novatel agreed to sell and Reliance agreed to buy certain Novatel mobile broadband

2

**COMPLAINT**

wireless data modems and accessories ("Products") pursuant to written purchase orders as may from time to time be issued by Reliance to Novatel ("Purchase Orders" or "P.Os."), "each of which shall be deemed to incorporate all the terms, conditions and other provisions of this Agreement." Ex. A, section 1(a).

7. Under the Agreement, Reliance was required to "order Products from Seller [Novatel] solely by submitting to Seller [Novatel] a non-cancellable, non-changeable P.O. (except increases or reschedules as specifically permitted in Section 6 [t]hereof) substantially in the form as set forth on Schedule 2 [t]hereof stating the items, the per unit Product price and quantities of Products which Distributor [Reliance] desires to purchase from Seller [Novatel] and the requested delivery date for such items (the "Requested Delivery Date")." Ex. A, section 4(a) (emphasis in original).

8. Under the Agreement, Reliance submitted valid, non-cancellable, non-changeable Purchase Orders for Products as follows: (a) Purchase Order No. 6038 dated March 30, 2015 for 15,000 MIFI 6620L Bengal mobile hotspot units for a purchase price of $2,055,150 and 22,000 VZW USB551 modems for a purchase price of $1,870,000, totaling $3,925,150 ("Exhibit C"); and (b) Purchase Order No. 6090 dated April 7, 2015 for 1,801 units of VZW USB551 USB sticks for $153,085 ("Exhibit D"). The 1,801 units was a typographical error; subsequent communications between the parties and Novatel's invoice confirms that Purchase Order No. 6090 was actually for 1,810 units.

9. In accordance with section 4(b) of the Agreement, each Purchase Order was duly approved and accepted by Novatel, as evidenced by the "Purchase Order Approval" of Novatel on each Purchase Order, thus establishing that the pricing for the Products was as "reflected in the P.O. and the P.O. Acceptance Document." Ex. A, section 8(a).

10. In accordance with Reliance's Purchase Orders, Novatel timely shipped and duly delivered 15,000 MIFI 6620L Bengal mobile hotspot units and 22,000 VZW USB551 modems to Reliance (which Reliance accepted) and consequently invoiced Reliance as follows: (a) Novatel Invoice No. 1036618 dated March 31, 2015 for 15,000 MIFI 6620L Bengal mobile hotspot units and 22,000 VZW USB551 modems for a total of $3,925,150; and (b) Novatel Invoice No.

1036687 dated April 16, 2015 for 1,810 VZW USB551 modems for $153,850, for a grand total of $3,925,150.  Copies of these invoices are attached collectively hereto as "Exhibit E".

11.  Payment terms for Products delivered under the Agreement "shall be net thirty (30) from the date of the applicable invoice.  Outstanding balances due and payable by Distributor [Reliance] to Seller [Novatel] hereunder shall accrue interest at the monthly rate of 1%."  Ex. A, section 8(b).

12.  In or about October, 2015, as a favor to Reliance, Novatel accepted the return of 22,549 MIFI 6620 units worth $3,089,438.49 even though none of Novatel's products were defective, and even though Novatel was not contractually obligated to do so, which Novatel credited against Reliance's amounts due for Novatel's USB551 units it had sold and shipped to Reliance.  In addition, Novatel further credited Reliance's outstanding balance in the amount of $286,010 for unpaid Market Development Funds (MDF), resulting in the present outstanding balance of $549,701.51, which remains past due and outstanding, plus 1% interest per month from the date the sums became due and owing.

13.  Reliance has no right to return any of the USB551 units that Novatel sold and shipped to Reliance and no right to request any RMA from Novatel in connection with the USB551 modem units, other than as prescribed in the Agreement and Amendment, which permit Reliance to request an RMA from Novatel only for the return of defective Products to Novatel for warranty repair, and for no other purpose. Ex. A, Section 11(b); Ex. B, Section 11(a), (c).  None of the USB551 Products that Novatel sold and shipped to Reliance is or was defective.

14.  Despite numerous requests for payment, Reliance has failed and refused to pay the outstanding balance it owes to Novatel of $549,701.51 plus 1% interest per month from the date the sums became due and owing.

15.  Among other things, the Parties also agreed that "[n]o addition to or modification of this Agreement (or a waiver of a provision thereof) shall be effective unless made in writing and signed in wet ink by an Authorized Representative of each Party."  Ex. A, section 27.

16.  In April, 2012, the Parties entered into Amendment No. 1 to the Agreement, which deleted and replaced in their entirety Sections 11(a), 11(c) and 11(e) of the Agreement, added a

new Section 31 regarding Development and Testing, and added a new Section 32 regarding Facility Inspection and Audit Rights.  New Section 11 contained (among other things) an "RMA Procedure" under which Reliance was required to "screen all Products" at its own expense before "returning any defective Product" to Novatel for warranty repair.  Ex. B, section 11(c).  The RMA Procedure, however, did not authorize Reliance to return any Products (or request an RMA) for any other reason or purpose.  The Amendment did not modify or alter any payment terms, or any other terms of the Agreement, and no other addition to, modification of, or waiver of any provision of, the Agreement was ever executed.

## CAUSES OF ACTION
### COUNT ONE
#### (Breach of Contract)

17. Novatel repeats and realleges the allegations above as though set forth fully herein.

18. On October 13, 2010, Novatel and Reliance entered into Distribution Agreement also referred to as a Master Purchase Agreement under which (among other things) Novatel agreed to sell and Reliance agreed to buy certain Novatel mobile broadband wireless data modems and accessories ("Products") pursuant to written purchase orders as may from time to time be issued by Reliance to Novatel ("Purchase Orders" or "P.Os."), "each of which shall be deemed to incorporate all the terms, conditions and other provisions of this Agreement."  Ex. A, section 1(a).

19. Under the Agreement, Reliance was required to "order Products from Seller [Novatel] solely by submitting to Seller [Novatel] a non-cancellable, non-changeable P.O. (except increases or reschedules as specifically permitted in Section 6 [t]hereof) substantially in the form as set forth on Schedule 2 [t]hereof stating the items, the per unit Product price and quantities of Products which Distributor [Reliance] desires to purchase from Seller [Novatel] and the requested delivery date for such items (the "Requested Delivery Date")."  Ex. A, section 4(a) (emphasis in original).

20. Under the Agreement, Reliance submitted valid, non-cancellable, non-changeable Purchase Orders for Products as follows:  (a) Purchase Order No. 6038 dated March 30, 2015 for

1  15,000 MIFI 6620L Bengal mobile hotspot units for a purchase price of $2,055,150 and 22,000
2  VZW USB551 modems for a purchase price of $1,870,000, totaling $3,925,150 ("Exhibit C");
3  and (b) Purchase Order No. 6090 dated April 7, 2015 for 1,801 units of VZW USB551 USB
4  sticks for $153,085 ("Exhibit D").  The 1,801 units was a typographical error; subsequent
5  communications between the parties and Novatel's invoice confirms that the Reliance's Purchase
6  Order was actually for 1,810 units.  In accordance with section 4(b) of the Agreement, each
7  Purchase Order was duly approved and accepted by Novatel, as evidenced by the "Purchase
8  Order Approval" of Novatel on each Purchase Order, thus establishing that the pricing for the
9  Products was as "reflected in the P.O. and the P.O. Acceptance Document."  Ex. A, section 8(a).
10        21.   In accordance with Reliance's Purchase Orders, Novatel timely shipped and duly
11  delivered 15,000 MIFI 6620L Bengal mobile hotspot units and 22,000 VZW USB551 modems to
12  Reliance, which Reliance accepted, and consequently invoiced Reliance as follows:  (a) Novatel
13  Invoice No. 1036618 dated March 31, 2015 for 15,000 MIFI 6620L Bengal mobile hotspot units
14  and 22,000 VZW USB551 modems for a total of $3,925,150; and (b) Novatel Invoice No.
15  1036687 dated April 16, 2015 for 1,810 VZW USB551 modems for $153,850, for a grand total of
16  $3,925,150.  Copies of these invoices are attached collectively hereto as "Exhibit E".
17        22.   Payment terms for Products delivered under the Agreement "shall be net thirty
18  (30) from the date of the applicable invoice.  Outstanding balances due and payable by
19  Distributor [Reliance] to Seller [Novatel] hereunder shall accrue interest at the monthly rate of
20  1%."  Ex. A, section 8(b).
21        23.   In or about October, 2015, as a favor to Reliance, Novatel accepted the return of
22  22,549 MIFI 6620 units worth $3,089,438.49 even though none of Novatel's products were
23  defective, and even though Novatel was not contractually obligated to do so, which Novatel
24  credited against Reliance's amounts due for Novatel's USB551 units it had sold and shipped to
25  Reliance.  In addition, Novatel further credited Reliance's outstanding balance in the amount of
26  $286,010 for unpaid Market Development Funds (MDF), resulting in the present outstanding
27  balance of $549,701.51, which remains past due and outstanding, plus 1% interest per month
28  from the date the sums became due and owing.

24. In breach of the Agreement, Reliance has failed and refused to pay Novatel the outstanding balance due of $549,701.51.

25. Novatel has performed all its obligations under the Agreement, except any excused by virtue of Reliance's breach.

26. As a direct and proximate result of Reliance's breach, Novatel has been damaged in an amount according to proof at trial but in no event less than $549,701.51 plus 1% interest per month from the date the sums became due and owing.

**COUNT TWO**
**(Common Count for Goods and Merchandise Sold and Delivered)**

27. Novatel repeats and realleges the allegations above as though set forth fully herein.

28. Within the last four years, Novatel has sold and delivered goods and merchandise to Reliance at Reliance's request, for which Reliance has promised to pay and of which Reliance has accepted delivery, the value of which is $549,701.51.

29. The sum of $549,701.51 is due and unpaid despite Novatel's demand, plus 1% interest per month from the date the sums became due and owing.

**REQUEST FOR RELIEF**

WHEREFORE, Novatel prays that the Court enter judgment in favor of Novatel and against Reliance, and further enter an order as follows:

1. Awarding Novatel money damages in an amount to be determined at trial but in no event less than $549,701.51, plus pre- and post-judgment interest at 1% interest per month from the date the sums became due and owing;

2. Awarding Novatel such other and further damages as the Court may deem just and proper.

Dated: October 12, 2016         SAN DIEGO IP LAW GROUP LLP


                                By:/s/James V. Fazio
                                James V. Fazio (CSB 183353)
                                12526 High Bluff Drive, Suite 300
                                San Diego, CA 92130
                                jamesfazio@sandiegoiplaw.com

                                Attorneys for Plaintiff,
                                NOVATEL WIRELESS, INC.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Novatel hereby demands a trial by jury of all issues so triable.

Dated:  October 12, 2016          SAN DIEGO IP LAW GROUP LLP


By: /s/James V. Fazio
JAMES V. FAZIO, III
TREVOR Q. CODDINGTON, PH.D.

Attorneys for Plaintiff,
NOVATEL WIRELESS, INC.

**COMPLAINT**